**MARC S. HINES (SBN 140065)**
mhines@hinessmith.com
**MICHELLE L. CARDER (SBN 174481)**
mcarder@hinessmith.com
**CHRISTINE M. EMANUELSON (SBN 221269)**
cemanuelson@hinessmith.com
**HINES SMITH CARDER LEASURE DINCEL**
3080 Bristol Street, Suite 540
Costa Mesa, California 92626
Tel.: (714) 513-1122
Fax: (714) 513-1123

Attorneys for Plaintiffs, Fedor Emelianenko and M-1 Nederland b.v.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDOR EMELIANENKO, an individual; M-1 NEDERLAND b.v., a Dutch limited liability company, | CASE NO.:  **CV09-07865 MMM (MLGx)** |
| Plaintiffs, | PLAINTIFFS' COMPLAINT FOR: |
| vs. | 1. Breach of Fight Agreement<br>2. Breach of Implied Covenant of Good Faith and Fair Dealing-Fight Agreement<br>3. Breach of Consulting Agreement |
| AFFLICTION CLOTHING, a California business entity, form unknown; AFFLICTION ENTERTAINMENT, LLC, a California limited liability company; and DOES 1 through 50, inclusive, | 4. Breach of Implied Covenant of Good Faith and Fair Dealing-Consulting Agreement<br>5. Breach of Letter Agreement<br>6. Declaratory Relief-Fight Agreement<br>7. Declaratory Relief-Consulting Agreement and Letter Agreement |
| Defendants. | AND DEMAND FOR JURY TRIAL |

Plaintiffs, M-1 Nederland b.v. and Fedor Emelianenko allege the following against Defendants, Affliction Clothing, Affliction Entertainment, LLC and DOES 1 through 100.

## PARTIES, JURISDICTION, AND VENUE

1.     Fedor Emelianenko ("Emelianenko") is an individual who at all relevant times was a citizen and resident of the country of Russia.  Emelianenko is widely considered to be the world's best heavyweight mixed martial arts ("MMA") fighter and is and at all relevant times was promoted by M-1 Nederland b.v. ("M-1").

2.     M-1 is and, at all relevant times was, a limited liability corporation duly

1
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  organized and existing under the laws of the Netherlands and with its principal place
2  of business in the Netherlands.  M-1, generally known in the United States as M-1
3  Global, is a MMA bout promoter with a substantial presence in Europe and Asia.  M-
4  1 also partners with United States licensed promoters in connection with events
5  taking place in the United States and, in addition, is in the business of promoting and
6  managing top international MMA fighters.  At all relevant times, the owners and
7  principals of M-1 have been Vadim Finkelchtein, Apy Echteld, Joost Raimond, and
8  Emelianenko.

9      3.    Affliction Clothing is a business entity, form and place of formation
10  unknown, with its principal place of business in the State of California, City of Seal
11  Beach.  At all times mentioned herein, Affliction Clothing has been in the business
12  of promoting and sponsoring MMA events.  At all relevant times, the owners,
13  officers, directors, and principals of Affliction Clothing have been Todd Beard,
14  Thomas Atencio, Courtney Dubar, Eric Foss, and Clifton Chason.

15      4.    Affliction Entertainment, LLC is a limited liability company organized
16  and existing under the laws of the State of California and having its principal place of
17  business in the State of California, City of Seal Beach.  Affliction was converted
18  from Affliction Promotions, Inc. and underwent a name change from Affliction
19  Promotions, LLC to Affliction Entertainment, LLC.  At all times mentioned herein,
20  Affliction has been in the business of promoting and sponsoring MMA events.  At all
21  relevant times, the owners, officers, directors, and principals of Affliction
22  Entertainment, LLC have been Todd Beard, Thomas Atencio, Courtney Dubar, Eric
23  Foss, and Clifton Chason.

24      5.    Because of the multiple name changes, conversions, and various
25  machinations relating to the ownership and names of Affliction Clothing, Affliction
26  Entertainment, LLC, and other Affliction entities, the Affliction entities are referred
27  to herein collectively as "Affliction."

28      6.    Plaintiffs do not know the true names and capacities of Defendants,

1  Does 1 through 50, and therefore sues these Doe Defendants by such fictitious

2  names.  Plaintiffs are informed and believe and based thereon allege each of these

3  Doe Defendants was and is legally responsible for the damages or losses suffered by

4  Plaintiffs.  Plaintiffs will seek leave of court to amend this Complaint to allege the

5  true names and capacities of these Doe Defendants when this information has been

6  ascertained.

7          7.    Plaintiffs are informed and believe and based thereon allege Defendants,

8  and each of them are, and at all times mentioned herein were, the alter ego/sister

9  corporation of the other such that to allow these Defendants to maintain a

10 separateness would be to allow Defendants, and each of them, to perpetrate a fraud

11 on Plaintiffs and the community at large.

12         8.    Plaintiffs are informed and believe and based thereon allege, at all times

13 mentioned herein, Defendants, and each of them, were acting on their own behalf

14 and also as the agent, employee, representative, and/or joint venturer of each other,

15 and at all times, except as stated herein and subject to amendment of the Complaint

16 upon discovery of additional facts, were acting within the purpose, scope and

17 authority of said agency, employment, representation or joint venture, and with the

18 advance knowledge, consent, approval, and ratification of the remaining Defendants,

19 and each of them.

20         9.    The amount in controversy exceeds $75,000.00 and this Court has

21 jurisdiction pursuant to 28 U.S.C. §1332(a)(2).

22                           **GENERAL ALLEGATIONS**

23    **Affliction is Banned from the UFC and Decides to Become an MMA Event**

24                **Promoter in Competition with the UFC**

25        10.    Affliction is a popular clothing brand which has attained international

26 recognition and prominence through various celebrity and MMA fighter

27 endorsements.  Prior to January of 2008, Affliction sponsored Ultimate Fighting

28 Championship ("UFC") events and gained most of its notoriety as a result of UFC

                                        3
                COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  fighters—especially UFC World Heavyweight Champion Randy Couture—wearing

2  and endorsing Affliction branded clothing on televised and/or pay-per-view ("PPV")

3  events.

4    11.  However, in October of 2007, Randy Couture resigned from the UFC,

5  citing as his reason remuneration discontent.  The UFC responded in early January,

6  2008 by suing its heavyweight champion in a Las Vegas court.  When the UFC

7  learned Affliction was positioning itself in favor of Couture in this widely-publicized

8  MMA imbroglio, the UFC terminated its relationship with Affliction as a UFC

9  sponsor.  The UFC then banned all fighters from wearing or endorsing any Affliction

10  gear at any UFC event or at any time during the terms of their contracts.  Not to be

11  deterred, and with the avowed objective of "crushing" the UFC, Affliction decided to

12  enter the MMA event promotion business.

## Affliction Signs Emelianenko to a Fight Agreement and Enters into a
## Consulting Agreement with M-1

15    12.  In its quest to be the world's premier MMA event promoter, Affliction

16  naturally sought Emelianenko, the best and most renowned non-UFC heavyweight

17  fighter with whom Affliction already had a clothing sponsorship deal.  The parties

18  commenced negotiations in early 2008 and, on April 14, 2008, Affliction

19  Promotions, Inc., which Plaintiffs are informed, believe, and based thereon allege

20  now is known as Affliction Entertainment, LLC, signed Emelianenko to a three-bout

21  Fight Agreement.  On or about October 20, 2009, Plaintiffs, in writing, sought

22  Affliction's stipulation to disclose the terms of the Fight Agreement in the context of

23  litigation between the parties due to confidentiality restrictions contained in the Fight

24  Agreement.  Affliction did not respond.  As a result, Plaintiffs plead only those terms

25  essential to put Affliction on notice of the claims against it and those terms already a

26  matter of public knowledge.

27    13.  Pursuant to the Fight Agreement, the parties agreed, *inter alia*,

28  Emelianenko would fight a minimum of three (3) bouts.  The partial purse for each

1  fight—which was in addition to the substantial payment Emelianenko receives from

2  M-1 pursuant to the terms of a separate agreement—was to be $300,000 plus travel

3  and accommodation expenses. The total amount Emelianenko was to receive per

4  fight as a result of the Fight Agreement, *i.e.* the amount he receives from M-1 plus

5  the $300,000.00 per bout amount owed by Affliction, will be disclosed, subject to

6  protective orders, at the time of trial.

7       14.    Affliction and Emelianenko also agreed, during the term of the Fight

8  Agreement, which would not terminate or expire until completion of the third bout,

9  Affliction would be the sole and exclusive co-promoter of all MMA contests

10  involving Emelianenko in the United States. Emelianenko also agreed Affliction

11  would have exclusive world-wide promotional rights to the three bouts covered by

12  the Fight Agreement, except for Russia and Asia, for which Emelianenko reserved

13  all broadcast and promotion rights. The Fight Agreement also provides Emelianenko

14  shall not engage in or conduct negotiations to engage in any MMA match in the

15  United States other than the bouts covered by the Fight Agreement during the term of

16  the agreement, which ended no earlier than completion of a third bout. Affliction, on

17  the other hand, agreed to use commercially reasonable best efforts to arrange for

18  each bout and to use good faith efforts to find a fighter for each bout.

19       15.    Pursuant to Paragraphs 6 and 11 of the Fight Agreement, Affliction and

20  Emelianenko agreed Affliction would have all exclusive worldwide promotion rights

21  in and to the bouts covered by the Fight Agreement with the exception of certain

22  reserved promotion rights giving Emelianenko the exclusive right to distribute and

23  exploit the bouts subject to the Fight Agreement in certain venues.

24       16.    At the time it entered into the Fight Agreement with Emelianenko,

25  Affliction knew Emelianenko would rely upon Affliction's promise to co-promote

26  three bouts and would therefore forgo other opportunities in order to compete in the

27  all three bouts required by the Fight Agreement and to abide the restrictions of the

28  Fight Agreement. As a result of Affliction's promises, Emelianenko did forgo other

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  opportunities to compete in bouts both in and outside of the United States during the
2  term of the Fight Agreement.

3      17.    On the same date Affliction signed Emelianenko, Affliction also entered
4  into a Consulting Agreement with M-1. On or about October 20, 2009, Plaintiffs, in
5  writing, sought Affliction's stipulation to disclose the terms of the Consulting
6  Agreement in the context of litigation between the parties due to confidentiality
7  restrictions contained in the Consulting Agreement. Affliction did not respond. As a
8  result, Plaintiffs plead only those terms essential to put Affliction on notice of the
9  claims against it and those terms already a matter of public knowledge.

10     18.    Pursuant to the Consulting Agreement, M-1 agreed to provide general
11  consulting services to Affliction in connection with certain endeavors expressly
12  stated in the Consulting Agreement. In exchange for these services, Affliction
13  agreed to pay M-1 a substantial consulting fee. According to the payment schedule
14  set forth in the Consulting Agreement, Affliction was required to make its first
15  payment to M-1 on execution of the Consulting Agreement. The Consulting
16  Agreement further required Affliction to make a second payment to M-1 no later
17  than forty-eight (48) hours prior to the initial Emelianenko bout and the final
18  payment no later than forty-eight (48) hours prior to *each* of the second and third
19  Emelianenko bouts, contingent upon Emelianenko's arrival in the city of the
20  scheduled bouts. Affliction also agreed to arrange, pay for, and provide M-1 with
21  any and all expenses incurred in performing its duties under the Consulting
22  Agreement and further agreed to provide M-1 with certain promotional values.

23     19.    On May 20, 2008, Affliction and M-1 co-hosted a Los Angeles press
24  conference with Emelianenko to announce the first MMA event held in connection
25  with the foregoing contracts. This event, which was Affliction's response to the
26  UFC banning its fighters from wearing and promoting Affliction gear, took place on
27  July 19, 2008, and was titled, "*Affliction: Banned.*" *Affliction: Banned* was a U.S.
28  PPV-televised event hosted at the Honda Center in Anaheim in connection with a

6

1   California State Athletic Commission licensed promoter. Emelianenko and former

2   UFC Heavyweight Champion Tim Sylvia were on the main card. Emelianenko, who

3   submitted Sylvia thirty-six seconds into the first round, convincingly won the fight.

4   The main card was televised live on PPV and the undercards were televised live on

5   Fox Sports. Affliction paid Emelianenko as required under the Fight Agreement for

6   this first bout, and it also paid M-1 the consulting fees required under the Consulting

7   Agreement.

8    **Emelianenko Assigns Promotional Rights to M-1 and Affliction and**

9    **Emelianenko Modify Provisions of the Fight Agreement Pertaining to**

10   **Promotional Rights**

11       20.    Shortly after executing the Fight Agreement, for valuable consideration,

12   Emelianenko and M-1 entered into an agreement by which Emelianenko partially

13   assigned to M-1 all promotional rights reserved to Emelianenko by way of the Fight

14   Agreement, including but not limited to those promotional rights set forth or

15   referenced in Paragraphs 6, 7, and 11. The rights assigned by Emelianenko to M-1

16   include those reserved under the modified Fight Agreement as set forth hereinbelow.

17       21.    Prior to co-hosting the *Affliction:Banned* event, Affliction's CEO, Todd

18   Beard, admitted to M-1, and specifically Joost Raimond, Affliction did not have the

19   intent, capability, or desire to exploit promotional opportunities outside of the United

20   States. As a result, prior to *Affliction: Banned*, M-1 and Affliction orally agreed to

21   modify Paragraphs 6, 7, and 11 of the Fight Agreement, and modified these

22   provisions by conduct and course of performance, to reserve for Emelianenko and

23   ultimately M-1 as the assignee all international (outside the United States)

24   promotional rights.

25       22.    Affliction, both expressly by oral agreement and by its conduct and

26   course of performance of the Fight Agreement, waived, ignored, and abandoned the

27   provisions of Paragraph 20 of the Fight Agreement requiring modification by written

28   agreement.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

23.     Affliction is estopped from asserting the provisions of Paragraph 20 of the Fight Agreement requiring modification by written agreement and further is estopped from denying modification of the Fight Agreement.  At the time it represented it would waive international promotional rights and allow M-1 to exploit these opportunities, Affliction intended and knew M-1 would act on Affliction's representations and conduct by entering into agreements with third-party PPV and television providers to televise or broadcast the bouts and therefore would incur obligations and expenses under these agreements.  Moreover, during the course of performance of the Fight Agreement, Affliction knew M-1 actually was entering into such agreements with third-parties and further knew M-1 was expending substantial time and funds in connection with obtaining such agreements.  Despite this, Affliction never once objected or raised any dispute pertaining to the rights of M-1, as Emelianenko's assignee, to exploit international promotional rights and opportunities.

24.     Assuming Affliction required written modification or had a different understanding of the rights granted pursuant to the modification of Paragraphs 6, 7, and 11 of the Fight Agreement, Affliction had a duty to so inform M-1.  At no time was M-1, or Emelianenko, aware of Affliction's objection, assuming there was one, to M-1 exploiting international promotional rights under the modified Fight Agreement or doing so without written modification of the Fight Agreement.  M-1 relied on Affliction's representations, conduct, and silence by incurring obligations in connection with third-party agreements and by expending substantial resources to procure such agreements.

25.     No additional consideration was needed for modification of the Fight Agreement.  In addition to the foregoing facts establishing equitable and promissory estoppel precluding Affliction from denying modification or asserting the Fight Agreement may be modified only by written agreement, Affliction executed the oral modification agreement by accepting less than due under the unmodified Fight

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  Agreement. At no time did Affliction exploit, pursue, or obtain benefits from the

2  international promotional opportunities. On the contrary, Affliction intentionally

3  relinquished such rights and sat idly by while watching M-1 pursue and enter into

4  contracts with international third-party PPV and television providers outside of

5  Russia and Asia. The parties therefore mutually dispensed with contractual rights

6  and requirements by *quid pro quo* conduct antithetical to the written terms of the

7  unmodified Fight Agreement.

8  **M-1 and Affliction Execute the Letter Agreement and the Parties Perform Their**

9  **Obligations in Connection with the Second Affliction Event, *Affliction: Day of***

10  ***Reckoning***

11      26.    Following *Affliction: Banned*, the parties discussed and negotiated a

12  separate, unrelated written contract by which Affliction agreed to sponsor a series of

13  MMA events known as the "M-1 Challenge," an international MMA team

14  competition referred to as the World Cup of Mixed Martial Arts which was

15  developed in connection with the parties' effort to cultivate or "farm" new MMA

16  fighter talent.

17      27.    As such, effective September 27, 2008, Affliction Clothing and M-1

18  signed a Letter of Agreement ("Letter Agreement"). On or about October 20, 2009,

19  Plaintiffs, in writing, sought Affliction's stipulation to disclose the terms of the

20  Letter Agreement in the context of litigation between the parties due to

21  confidentiality restrictions contained in the Letter Agreement. Affliction did not

22  respond. As a result, Plaintiffs plead only those terms essential to put Affliction on

23  notice of the claims against it and those terms already a matter of public knowledge.

24      28.    By way of the Letter Agreement, M-1 promised to produce a certain

25  number of live M-1 Challenge events which would result in a minimum number of

26  one-hour television shows for the 2008 and 2009 seasons. M-1 also agreed to

27  provide Affliction specific promotional advantages relating to the M-1 Challenge

28  event titles, use of the Affliction logo in marketing and advertising for the M-1

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   Challenge events, and use of Affliction's name and logo in print collateral materials.

2      29.    In consideration for the foregoing, Affliction agreed to pay to M-1 a

3   substantial fee. Pursuant to Section 4 of the Letter Agreement, Affliction agreed to

4   pay the first installment by January 31, 2009, and the second installment by July 31,

5   2009.

6      30.    In the meantime, in connection with its obligations under the Fight

7   Agreement and the Consulting Agreement, Affliction co-promoted a second MMA

8   event. The event, titled *Affliction: Day of Reckoning*, was held on January 24, 2009,

9   at the Honda Center in Anaheim in front of a capacity crowd. Emelianenko again

10  fought on the main card and successfully defended his title against former UFC

11  Heavyweight Champion, Andrei Arlovski. The event main card was televised on

12  Showtime PPV with the undercard on HDNet.

13     31.    Affliction performed its obligations under the Fight Agreement and the

14  Consulting Agreement in connection with respect to *Affliction: Day of Reckoning*.

15  Affliction also performed its obligations with respect to the first installment due

16  under the Letter Agreement.

17  **M-1 and Affliction Plan the Third Event Required Under Their Contracts**

18  **While M-1 Works to Establish PPV and Television Deals Throughout the**

19  **World**

20     32.    Following the *Affliction: Day of Reckoning* event, the parties began

21  planning *Affliction: Trilogy*, the third event required under the Fight Agreement and

22  the Consulting Agreement scheduled to take place on August 1, 2009, at the Honda

23  Center in Anaheim. The main card for *Affliction: Trilogy* would feature

24  Emelianenko against former UFC Heavyweight Champion Josh Barnett.

25     33.    However, at the same time it was assisting Affliction with preparations

26  for *Affliction: Trilogy*, M-1 began working with its international contacts to facilitate

27  broadcasts of *Affliction: Trilogy* on PPV and television channels in numerous

28  locations, including but not limited to Mexico, Central America, the Caribbean basin,

10

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   South America, Eastern Europe, the United Kingdom, Australia, New Zealand,

2   Japan, and Korea.

3       34.    At all relevant times, including the time at which Affliction entered into

4   the subject agreements and up to the present, Affliction has known of Emelianenko's

5   and M-1's business relationships and presence outside the United States as well as

6   their ability to exploit broadcast opportunities in Russia and Asia and the fact they

7   would do so in connection with performing under the Fight Agreement.  Affliction

8   also knew, at the time it entered into the modified Fight Agreement, M-1 as

9   Emelianenko's partial assignee retained the right to license television and PPV

10  providers the right to broadcast Affliction events in territories outside the United

11  States.

12      35.    As such, at the time it entered into the Fight Agreement and modified

13  Fight Agreement, Affliction knew Emelianenko or M-1 as the partial assignee would

14  profit from PPV and television broadcast deals pertaining to each of three Affliction

15  events required under the Fighter Agreement and the Consulting Agreement.

16  Affliction therefore could and did foresee its failure to complete any of the three

17  events would cause M-1 to breach agreements with PPV and television providers, to

18  lose revenue it otherwise would have earned under agreements with these providers,

19  and to incur expenses procuring and performing under these third party agreements.

20      36.    As alluded to above, even prior to entering into the agreements which

21  are the subject of this action, M-1 had been working diligently for two years to

22  establish relationships and PPV/television presence in these locations, most

23  significantly, Japan and Russia.  MMA is a dominant sport in Japan and is a country

24  in which Emelianenko frequently bouts and is wildly popular.  In Russia, which is

25  Emelianenko's homeland, Emelianenko is considered a national hero.  Any MMA

26  event featuring Emelianenko on its main card and broadcast in either of these

27  countries would draw a substantial viewing audience, and M-1 knew the *Affliction:*

28  *Trilogy* event was going to be a blockbuster in these countries.

11

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

37.    With this backdrop, on June 11, 2009, M-1 entered into a Deal Memo with Real Entertainment Inc. ("Real") by which M-1 agreed to appoint Real as its exclusive agent for distribution of, *inter alia*, the *Affliction:Trilogy* event in various territories, including Japan, and to pay Real $20,000 per month in exchange for its service.  Thereafter, Real obtained an agreement from SkyPerfect, Japan's main provider of satellite television access, to televise *Affliction: Trilogy* on its PPV channel.  This deal was the culmination of M-1's painstaking two-year effort to build relationships with the Japanese, to increase Emelianenko's popularity and following in Japan, and to bring Emelianenko to Japanese television audiences.

38.    Prior to entering into the SkyPerfect agreement, on May 19, 2009, and on behalf of M-1, Blue Entertainment Sports Television, Inc. ("Best") entered into a Programme Acquisition Deal Memo with Virgin Media Television Limited ("Virgin") by which M-1 licensed Virgin the right to televise the Affliction events (including *Affliction: Trilogy*) in the United Kingdom in exchange for per event licensing fees payable to M-1.

39.    On June 19, 2009, in exchange for a flat fee, M-1 directly entered into a Program License Agreement with HBO Ole Acquisitions, LLC ("Ole") by which M-1 granted Ole the exclusive right to televise *Trilogy* in Mexico, Central America (including without limitation Belize, Costa Rica, El Salvador, Guatemala, Honduras, Nicaragua, and Panama), South America (including without limitation Argentina, Bolivia, Brazil, Chile, Columbia, Ecuador, French Guyana, Guyana, Paraguay, Peru, Suriname, Uruguay, and Venezuela), and the Caribbean basin (excluding Puerto Rico and the U.S. Virgin Islands but including without limitation Anguila, Antigua and Barbuda, Aruba, the Bahamas, Barbados, Bermuda, the British Virgin Islands, the Cayman Islands, Cuba, Dominica, Dominican Republic, Grenada, Guadeloupe, Haiti, Jamaica, Martinique, Montserrat, the Netherlands Antilles, St. Kitts and Nevis, St. Lucia, St. Vincent and the Grenadines, Trinidad, Tobago and the Turks and Caicos Islands).

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

40.     On June 22, 2009, on behalf of M-1, Best entered into a Memorandum of Agreement with Sky Network Television Limited ("Sky") by which M-1 licensed Sky the right to broadcast *Affliction: Trilogy* on its PPV and Near Video Demand channels in New Zealand in exchange for 50% of the gross revenues from the production.

41.     Similarly, M-1 entered into an agreement with Best to obtain licensing agreements in various territories.  On June 30, 2009, and on M-1's behalf, Best entered into a Term Sheet with Main Event Television to broadcast *Affliction: Trilogy* on its PPV channel throughout Australia in exchange for paying M-1 10% of the gross income from the production.

42.     In Russia, however, in addition to obtaining agreements to televise *Affliction: Trilogy* on premium channels, M-1 achieved an unprecedented agreement with "Channel One"—which had never before broadcast any MMA event—to televise *Affliction: Trilogy* throughout Russia.  The channel, which is majority owned and controlled by the Russian government, has a 35% rating and is the most prosperous Russian mainstream television channel.  The Channel One agreement opened to M-1 the ability to attract major sponsors and the opportunity to bring Emelianenko prime-time and mainstream to every television in every home in Russia.  The Channel One *Affliction: Trilogy* deal was the culmination of many years of hard work by both M-1 and Emelianenko to bring MMA into the Russian mainstream and resulted from M-1's careful cultivation of significant business relationships.

43.     M-1 entered into additional PPV/broadcast agreements to be disclosed and proven at trial.

44.     In the meantime and concurrently, as stated above, M-1 performed its obligations under the Consulting Agreement and worked with Affliction to plan *Affliction: Trilogy*.  The parties established and approved a show budget and marketing and advertising budgets, signed the Honda Center lease, developed the

13
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   look and feel of the show, established ticket prices and venue scaling, executed

2   agreements with broadcast partners, identified and assigned video pieces, scheduled

3   and wrote press releases, built poster art and a website for the show, obtained bill

4   board space in prominent locations including Times Square, developed the advanced

5   pre-sale strategy, executed the hotel contract, obtained featured fighters and, through

6   Golden Boy Promotions, entered into Bout Agreements, established sponsorship

7   prices and selling strategies, and coordinated fighter travel, medicals, licensing, and

8   housing.

9   **Affliction Cancels Trilogy and Breaches the Fight Agreement and Consulting**

10   **Agreement**

11       45.   *Affliction: Trilogy* was, no doubt, a highly anticipated event.  The event

12   and identity of the fighters officially was announced on May 29, 2009, with the main

13   card bouts to be broadcast live on Showtime and undercards live on HDNet.

14   National promotion of the event began shortly thereafter on June 3, 2009, when

15   Emelianenko and Vadim Finkelchtein appeared in New York along with Mark

16   Cuban, Donald Trump, Josh Barnett, and Thomas Atencio at a press conference

17   promoting *Affliction: Trilogy*.  On June 5, 2009, at the request of Thomas Atencio,

18   Emelianenko traveled to Kansas City to allow photographs and provide autographs at

19   Buckle, the nation's largest retailer of Affliction clothing.

20       46.   On June 6, 2009, Emelianenko appeared with Josh Barnett on Showtime

21   to promote the event.  M-1, Affliction, Golden Boy Promotions, and Roy

22   Engelbrecht conducted the production meeting on June 16, 2009, and, as of July 22,

23   2009, the planning and production of *Affliction: Trilogy* appeared to M-1 and

24   Emelianenko to be on track.

25       47.   However, on July 22, 2009, M-1 and Affliction learned Josh Barnett

26   tested positive for steroids and was denied his California State Athletic Association

27   license.  M-1 and Emelianenko immediately began discussions with Affliction about

28   signing a suitable replacement fighter.  The parties identified Vitor Belfort, a former

14

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1 | UFC Light Heavyweight Champion, and Brett Rogers, a talented fighter who

2 | competes under the Strikeforce banner and who had just defeated former UFC

3 | Heavyweight Champion Andrei Arlovski during the prior month.

4 |     48.   Initially, Strikeforce and Showtime, which broadcasts Strikeforce

5 | events, were unwilling to release Brett Rogers to fight Emelianenko in an Affliction

6 | event. However, after negotiations, Affliction stated it was willing to sponsor

7 | Strikeforce/Showtime shows in the future and M-1 agreed to grant Strikeforce the

8 | right to co-promote a rematch with Brett Rogers, as well as providing other options

9 | pertaining to Emelianenko. As a result, Strikeforce agreed to release Brett Rogers to

10 | fight Emelianenko in the *Affliction: Trilogy* event. In addition, Emelianenko

11 | informed Affliction he was willing to fight several other fighters, including the

12 | undefeated Bobby Lashley.

13 |     49.   Yet, unbeknownst to M-1 and Emelianenko, Affliction was, at this very

14 | same time, also pursuing a contrary purpose by diligently working to repair its

15 | relationship with the UFC. Affliction—speaking out both sides of its mouth— was

16 | actively involved in discussions with the UFC regarding a renewed sponsorship deal

17 | between Affliction and the UFC *at the same time Affliction purportedly was*

18 | *negotiating to obtain a replacement fighter for Affliction: Trilogy*. Of course, the

19 | resurrection of a sponsorship arrangement between the UFC and Affliction would

20 | require Affliction to depart the MMA event promoting business and therefore breach

21 | its agreements with M-1 and Emelianenko.

22 |     50.   And this is exactly what Affliction did. On July 24, 2009, M-1's

23 | corporate legal counsel, Steven Bash, sat inside Affliction's offices awaiting

24 | completion of the meeting at which he believed Affliction was making a final

25 | decision regarding who would fight Emelianenko in the *Affliction: Trilogy* event.

26 | Much to Mr. Bash's surprise, Affliction's principals were not meeting in regard to

27 | finding a replacement *Affliction: Trilogy* fighter. They were meeting with the UFC

28 | to finalize their own sponsorship deal.

1    51.    Emelianenko and M-1, at all relevant times, believed Affliction was

2 acting in good faith and working to sign either Vitor Belfort or Brett Rogers. Yet, as

3 of *at least* July 22, 2009, Affliction was conducting negotiations with the UFC

4 which, as a practical matter, would preclude *Affliction: Trilogy* from materializing.

5 Rather than informing M-1 and Emelianenko it intended to cancel *Affliction: Trilogy*

6 and breach the Fight Agreement and Consulting Agreement if it could repair its

7 relationship with the UFC, Affliction withheld this information and continued its

8 self-serving negotiations with the UFC until July 24, 2009, at which time

9 Emelianenko and a party of thirty (30) already had boarded a flight from Russia to

10 Los Angeles.

11    52.    Affliction announced the cancellation *Affliction: Trilogy* on July 24,

12 2009, while Emelianenko was in flight to the United States. Emelianenko did not

13 learn of the cancellation until Mr. Bash provided this information upon

14 Emelianenko's arrival in Los Angeles. Shortly thereafter, Affliction announced its

15 reunion with the UFC and its departure from MMA event promotions.

16    53.    The reasons Affliction asserted for cancelling *Affliction: Trilogy*—

17 ranging from not having time to find a suitable fighter to not having sufficient time to

18 promote the event—were pretext. Affliction and M-1 negotiated the release of Brett

19 Rogers just one day before Affliction announced cancellation of *Affliction: Trilogy*

20 and at the same time it made a decision to align itself with the UFC. Plaintiffs

21 therefore allege on the basis of currently known information and belief Affliction

22 was simultaneously pursuing two manifestly incompatible options, a sponsorship

23 deal with the UFC and a suitable fighter to allow *Affliction: Trilogy* to go forward,

24 because it wanted to keep all options open to Affliction. Plaintiff is informed,

25 believes, and based thereon alleges Affliction intended to sign Brett Rogers to fight

26 in *Affliction: Trilogy* and intended to go forward with the event if the UFC deal

27 failed, but intended to cancel *Affliction: Trilogy* if the UFC deal closed.

28    54.    Brett Rogers was ready, willing, and able to fight Emelianenko in

16

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   *Affliction: Trilogy*, but instead of honoring its promises to Emelianenko and M-1 by

2   signing Rogers, Affliction elected to serve its own financial interests at the expense

3   of its partners.  After conducting discovery regarding the events leading to the

4   *Affliction: Trilogy* cancellation and determining what discussions and agreements

5   took place between Affliction and the UFC, and when these discussions took place,

6   Plaintiffs will amend this Complaint to add additional allegations, causes of action,

7   and parties as supported by the facts discovered.

8   

### FIRST CAUSE OF ACTION

9   **Breach of Fight Agreement**

10   **By Emelianenko and M-1 against Affliction Entertainment, LLC and Does 1-15**

11        55.   Plaintiffs refer to and incorporate herein by reference the allegations of

12   each and every paragraph herein.

13        56.   For valuable consideration, Defendants entered into a Fight Agreement

14   with Emelianenko by which Defendants agreed, *inter alia*: to co-promote a minimum

15   of three (3) bouts; to use commercially reasonable best efforts to arrange three (3)

16   bouts and to provide Emelianenko with an opponent for the bouts; to pay

17   Emelianenko the specified amount per bout; and to pay certain travel and

18   accommodation expenses.

19        57.   As stated above, Emelianenko assigned all international promotional

20   rights provided under the Fight Agreement and the modified Fight Agreement to M-1

21   and Affliction was at all times aware of the assignment and the fact M-1 was

22   exploiting international promotional rights.

23        58.   Defendants further entered into an agreement with Plaintiffs to modify

24   Paragraphs 6, 7, and 11 of the Fight Agreement in order to release all international

25   promotional rights (outside the United States) reserved under the Fight Agreement

26   and to grant these rights to Plaintiffs.  Defendants waived any right to require written

27   modification and are estopped from requiring same or disputing modification, and no

28   additional consideration for the modification is required, for the reasons stated within

17

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  the General Allegations.

2      59.    Plaintiffs performed all conditions and requirements under the Fight

3  Agreement, except those excused as a matter of law.

4      60.    Defendants breached the Fight Agreement by failing to complete the

5  third bout under the Fight Agreement and by failing to pay bout fees and travel and

6  accommodation expenses required under the Fight Agreement.

7      61.    At the time the parties entered into the Fight Agreement, Defendants

8  knew and could foresee their failure to complete three (3) bouts as required by the

9  agreement would cause Emelianenko damages including but not limited to the direct

10  loss of benefits provided under the Fight Agreement.

11      62.    Defendants further knew and could foresee at the time they entered into

12  the Fight Agreement, and at the time they agreed to the modification of same, their

13  failure to complete bouts required by the Fight Agreement would cause Plaintiffs the

14  loss of endorsements and other revenue they expected to receive in connection with

15  the international broadcast of each bout, particularly the third bout.

16      63.    As a result of the Defendants' breaches, Plaintiffs have been damaged in

17  an amount, to be proven according to proof at the time of trial, and no less than $10

18  million.

19                    **SECOND CAUSE OF ACTION**

20        **Breach of the Implied Covenant of Good Faith and Fair Dealing**

21                        **Fight Agreement**

22  **By Emelianenko and M-1 against Affliction Entertainment, LLC and Does 1-15**

23      64.    Plaintiffs refer to and incorporate herein by reference the allegations of

24  each and every paragraph herein.

25      65.    For valuable consideration, Defendants entered into the Fight

26  Agreement with Emelianenko by which Defendants agreed, *inter alia*: to co-promote

27  a minimum of three (3) bouts; to use commercially reasonable best efforts to arrange

28  Bouts and provide Fighter with an opponent for the Bouts; to pay Emelianenko a

18

1  certain fee per bout; and to pay certain travel and accommodation expenses.

2      66.    As stated above, Emelianenko assigned all international promotional

3  rights provided under the Fight Agreement and the modified Fight Agreement to M-1

4  and Affliction was at all times aware of the assignment and the fact M-1 was

5  exploiting international promotional rights.

6      67.    Defendants further entered into an agreement with Plaintiffs to modify

7  Paragraphs 6, 7, and 11 of the Fight Agreement in order to release all international

8  promotional rights (outside the United States) reserved under the Fight Agreement

9  and to grant these rights to Plaintiffs.  Defendants waived any right to require written

10  modification and are estopped from requiring same or disputing modification, and no

11  additional consideration for the modification is required, for the reasons stated within

12  the General Allegations.

13      68.    Plaintiffs performed all conditions and requirements under the Services

14  Agreement, except those excused as a matter of law.

15      69.    Defendants had a duty imposed by law not to act in a manner precluding

16  Plaintiffs from obtaining the benefits or objectives of the Fight Agreement.

17  Defendants' duty requires Defendants to not unjustifiably hinder Plaintiffs' ability to

18  perform under the contract and to not take advantage of the failure of a condition

19  precedent when Defendants have themselves frustrated performance or occurrence of

20  that condition.

21      70.    Defendants have breached the duty of good faith and fair dealing owed

22  by frustrating and precluding the occurrence of the third bout and specifically by: (a)

23  failing to sign Brett Rogers or to use commercially reasonable best efforts to procure

24  one of several other fighters Emelianenko identified as suitable to fight in the *Trilogy*

25  event; (b) canceling *Trilogy* despite suitable fighters being ready, willing, and able to

26  fight Emelianenko in the *Trilogy* event; and (c) failing to complete a third event

27  pursuant to the Fight Agreement, either by postponing and completing *Trilogy* or by

28  promoting a third event.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

71.     At the time the parties entered into the Fight Agreement, Defendants knew and could foresee their failure to complete three (3) bouts as required by the agreement would cause Emelianenko damages including but not limited to the direct loss of benefits provided under the Fight Agreement.

72.     Defendants further knew and could foresee at the time they entered into the Fight Agreement, and at the time they agreed to the modification of same, their failure to complete bouts required by the Fight Agreement would cause Plaintiffs the loss of endorsements and other revenue they expected to receive in connection with the international broadcast of each bout, particularly the third bout, and also expenses they would incur in connection with international broadcasts and promotion.

73.     As a result of these breaches, Plaintiffs have been damaged in an amount, to be proven according to proof at the time of trial, and no less than $10 million.

## THIRD CAUSE OF ACTION

### Breach of Consulting Agreement

### By M-1 against Affliction Entertainment, LLC and Does 1-15

74.     Plaintiffs refer to and incorporate herein by reference the allegations of each and every paragraph herein.

75.     For valuable consideration, Defendants entered into a Consulting Agreement with M-1 by which Defendants agreed, *inter alia*: (a) to pay M-1 a specified fee in an amount to be proven at trial no later than forty-eight (48) hours prior to the third bout to be completed under the Consulting Agreement; (b) to provide M-1 promotional value, including articles in event programs, incorporation of the M-1 logo in Affliction advertising, logo recognition with advertising in connection with each of the three (3) bouts, to promote M-1 events through video announcements at the bouts, and to create and sell posters co-branded with the M-1 logo; and (c) to pay all of M-1's costs and expenses in connection with the Consulting Agreement and incurred in the performance of the Consulting

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  Agreement.

2      76.    The Consulting Agreement incorporates and refers to the Fight

3  Agreement requiring Emelianenko's participation in a minimum of three (3) bouts.

4      77.    M-1 performed all conditions and requirements under the Consulting

5  Agreement, except those excused as a matter of law.

6      78.    Defendants had a duty imposed by law not to act in a manner precluding

7  M-1 from obtaining the benefits or objectives of the Consulting Agreement.

8  Defendants' duty requires Defendants to not unjustifiably hinder M-1's ability to

9  perform under the contract and to not take advantage of the failure of a condition

10  precedent when Defendants have themselves frustrated performance or occurrence of

11  that condition.

12      79.    Defendants breached the Consulting Agreement by failing to pay M-1

13  the specified fee forty-eight (48) hours prior to the third bout required under the

14  Consulting Agreement and by failing to pay M-1's expenses incurred in its

15  performance of the Consulting Agreement.

16      80.    As a result of the Defendants' breaches, M-1 has been damaged in an

17  amount, to be proven according to proof at the time of trial, and no less than $2

18  million.

19                      **FOURTH CAUSE OF ACTION**

20  **Breach of the Implied Covenant of Good Faith and Fair Dealing—Consulting**

21                              **Agreement**

22      **By M-1 against Affliction Entertainment, LLC and Does 1-15**

23      81.    Plaintiffs refer to and incorporate herein by reference the allegations of

24  each and every paragraph herein.

25      82.    For valuable consideration, Defendants entered into a Consulting

26  Agreement with M-1 by which Defendants agreed, *inter alia*: (a) to pay M-1 a

27  specified fee no later than forty-eight (48) hours prior to the third bout to be

28  completed under the Consulting Agreement; (b) to provide M-1 promotional value,

1  including articles in event programs, incorporation of the M-1 logo in Affliction

2  advertising, logo recognition with advertising in connection with each of the three (3)

3  bouts, to promote M-1 events through video announcements at the bouts, and to

4  create and sell posters co-branded with the M-1 logo; and (c) to pay all of M-1's

5  costs and expenses in connection with the Consulting Agreement and incurred in the

6  performance of the Consulting Agreement.

7      83.  M-1 performed all conditions and requirements under the Consulting

8  Agreement, except those excused as a matter of law.

9      84.  Defendants have breached the duty of good faith and fair dealing owed

10  to M-1 by frustrating and precluding the occurrence of the third bout and specifically

11  by: (a) failing to sign Brett Rogers or to use commercially reasonable best efforts to

12  procure one of several other fighters Emelianenko identified as suitable to fight in the

13  *Trilogy* event; (b) canceling *Trilogy* despite suitable fighters being ready, willing,

14  and able to fight Emelianenko in the *Trilogy* event; and (c) failing to complete a third

15  event pursuant to the Fight Agreement, either by postponing and completing *Trilogy*

16  or by promoting a third event.

17      85.  As a result of the Defendants' breaches, M-1 has been damaged in an

18  amount, to be proven according to proof at the time of trial, and no less than $2

19  million.

20  ### FIFTH CAUSE OF ACTION

21  **Breach of Letter Agreement**

22  **By M-1 against Affliction Clothing and Does 1-15**

23      86.  Plaintiffs refer to and incorporate herein by reference the allegations of

24  each and every paragraph herein.

25      87.  For valuable consideration, Defendants entered into a Consulting

26  Agreement with M-1 by which Defendants agreed, *inter alia*, to pay M-1 a specified

27  fee. Per Section 4 of the Letter of Agreement, Defendants agreed to pay the first

28  installment by January 31, 2009, and the second installment by July 31, 2009.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

88.    M-1 has performed all conditions and requirements under the Consulting Agreement, except those excused as a matter of law.

89.    Defendants breached the Letter Agreement by failing to pay M-1 the second installment, subject to confidentiality restrictions, in an amount to be proven at trial.

90.    As a result of Defendants' breach, M-1 has been damaged in an amount to be established according to proof at the time of trial and no less than $500,000.

## SIXTH CAUSE OF ACTION

### Declaratory Relief

### By Emelianenko against Affliction and Does 1-10

91.    Plaintiffs refer to and incorporate herein by reference the allegations of each and every paragraph herein.

92.    An actual controversy has arisen and now exists between Emelianenko and Defendants concerning their respective rights and duties under the Fight Agreement and as to legal consequences resulting from facts alleged in preceding paragraphs. Emelianenko contends Defendants breached the Fight Agreement, and are liable thereunder, but nonetheless that Emelienenko is released from any further obligations under the Fight Agreement in light of Defendants' breach. Emelianenko is informed, believes, and based thereon alleges Defendants dispute this contention.

93.    Emelianenko desires a judicial determination of his rights and duties, and a declaration as to the rights and duties arising out of the Fight Agreement, including interpreting the validity of the agreements and the obligations contained therein.

94.    A judicial declaration is necessary and appropriate at this time under the circumstances so Emelianenko may ascertain his rights and duties as stated above.

/ / /

/ / /

/ / /

23

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## SIXTH CAUSE OF ACTION

### Declaratory Relief

### By M-1 against Affliction, Affliction Clothing, and Does 1-10

95.    Plaintiffs refer to and incorporate herein by reference the allegations of each and every paragraph herein.

96.    An actual controversy has arisen and now exists between M-1 and Defendants concerning their respective rights and duties under the Consulting Agreement and Letter Agreement and as to legal consequences resulting from facts alleged in preceding paragraphs. M-1 contends Defendants breached the Consulting Agreement and Letter Agreement, and are liable thereunder, but nonetheless that M-1 is released from any further obligations under the Consulting Agreement and Letter Agreement in light of Defendants' breach. M-1 is informed, believes, and based thereon alleges Defendants dispute this contention.

97.    M-1 desires a judicial determination of his rights and duties, and a declaration as to the rights and duties arising out of the Consulting Agreement and Letter Agreement, including interpreting the validity of the agreements and the obligations contained therein.

98.    A judicial declaration is necessary and appropriate at this time under the circumstances so M-1 may ascertain its rights and duties as stated above.

## PRAYER

Based on the foregoing, Plaintiffs pray for the following judgment and relief:

a)    Compensatory damages;

b)    Costs of suit herein incurred on all causes of action;

c)    Attorneys' fees where and as allowed by law;

g)    Interest at the highest legal rate where and as allowed by law; and

h)    Such other and further relief as the Court may deem proper on all causes

///

24

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1 | of action.

2 | DATED: October 28, 2009    HINES SMITH CARDER LEASURE DINCEL

3

4

5 | By: _____
    Marc S. Hines

6 | Michelle L. Carder
    Christine M. Emanuelson

7 | Attorneys for Plaintiffs,
    Fedor Emelianenko and M-1 Nederland b.v.

8

9 | **DEMAND FOR JURY TRIAL**

10 | Plaintiffs demand a trial by jury.

11 | DATED: October 28, 2009    HINES SMITH CARDER LEASURE DINCEL

12

13 | By: _____

14 | Marc S. Hines
    Michelle L. Carder

15 | Christine M. Emanuelson
    Attorneys for Plaintiffs,

16 | Fedor Emelianenko and M-1 Nederland b.v.

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL